IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOHN WESLEY LaFEVER                                                                                   PLAINTIFF

v.                                              NO.  6:05-6068

JACKIE NEWBORN and
TROY TUCKER                                                                                          DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

John Wesley LaFever(Plaintiff) filed this pro se civil rights action under 42 U.S.C. § 1983 on September 12, 2005.  (Doc. 1).  Plaintiff's complaint was filed *in forma pauperis* (IFP) and certified to proceed on May 19, 2006.  The named Defendants were properly served and an answer was filed on June 19, 2006.  (Doc. 8).  The Defendants filed a Motion for Summary Judgment on September 15, 2006 (Doc. 14) and the Plaintiff filed a response to the Motion for Summary Judgment on November 20, 2006 (Doc. 18).[1]  The Motion for Summary Judgment was referred to the undersigned for a report and recommendation.

### I. Background

Plaintiff stated that when he was incarcerated in the Clark County Detention Center he filed numerous grievances that went unanswered.  Plaintiff states that Defendant Newborn would read and throw them away.  Plaintiff also states he was told that if he complained, jailers would "make [his] life a living hell."  Additionally, Plaintiff alleges defendants "chewed him out" for filing grievances, and told him he was faking his medical issues.

---

[1] Plaintiff's Response to Motion for Summary Judgment was in the form of answers to questions propounded by the Court to assist Plaintiff in responding to the issues raised by the Motion for Summary Judgment. Plaintiff's response was timely filed and has been considered by the Court in making this Report and Recommendation.

Most of Plaintiff's complaints center around an infected tooth he had while incarcerated in the Clark County Detention Center. Plaintiff states he did not see the dentist after January 27, 2005, although he put in several requests for an appointment. At one point Plaintiff alleges he put in over 100 medical requests between January 27, 2005 and August 20, 2005. However, in his response to the Motion for Summary Judgment Plaintiff states there were only three dates when he was denied medical treatment: January 28, 2005, February 1, 2005, and February 20, 2005.

## II. Discussion

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Official Capacity Claims

Plaintiff has sued Defendants in their individual and official capacities. Plaintiff's official capacity claims are tantamount to suing Clark County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on respondeat superior, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280

(8th Cir.1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. In his Response to the Motion for Summary Judgment (Doc. 18), Plaintiff states there was a custom or policy leading to denial of medical care due to how the county investigated medical claims and problems, chose cost over medical needs, and allowed no appeal of the grievance procedure.

Plaintiff has failed to state a custom or policy of denial of medical treatment in support of his medical treatment claim. Other than his bare allegations, Plaintiff has presented no evidence of a custom or policy of Clark County regarding a delay of medical care, investigation of claims, and choosing cost over medical needs. Accordingly, Summary Judgment should be granted in favor of the Defendants on Plaintiff's official capacity claims.

**B. Denial of Medical Care**

As Plaintiff was a pretrial detainee, his denial of medical care claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth. "The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear." *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir.1999). Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard. *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer*, 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir.1994)(analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials (arresting officers) actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen* 205 F.3d 1094, 1096 (8th Cir.2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)). Additionally, " '[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir.2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.*"* *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086

(8th Cir.1997) (per curiam) (internal quotation and citation omitted). Deliberate indifference can be manifested by an intentional denial of or delay in providing access to medical care. *Charron v. Medium Sec. Inst.,* 730 F. Supp. 987, 996 (E.D. Mo.1989).

In this case, it is clear that Plaintiff notified Defendants of his medical needs. He states he filed many grievances and even showed the Defendants where his tooth was bleeding and had a green discharge. However, there is no medical evidence submitted to support that Plaintiff's toothache was a serious medical need. Even assuming Plaintiff did suffer from a serious medical need, there is no evidence to support Plaintiff's claims he was denied medical treatment.

Plaintiff specifically states he was denied medical treatment on January 28, 2005, February 1, 2005, and February 20, 2005. On January 28, 2005, Plaintiff claims he was having stomach pains, kidney and bladder problems and was depressed. Plaintiff does not state that he filed any sort of grievance or medical request regarding these problems, but does indicate that he could not get any help. However, the records indicate that Plaintiff had been to see Dr. Byrd on January 25, 2005. Records also show that on January 28, 2005, Defendant Newborn spoke with Plaintiff extensively about his medical issues. As a result of this discussion, Plaintiff was seen by a dentist on February 2, 2005, for dental treatment due to pain from a dry-socket that resulted from a previous tooth extraction.

Plaintiff states on February 1, 2005, he put in a request to see the dentist but the request is not on file. However, Plaintiff was seen by a dentist the next day, February 2, 2005, thus he suffered no harm from the missing request. Further, Plaintiff states a request he made on March 12, 2005, was thrown away by Defendant Newborn. Plaintiff does not state the nature of this request or any harm that resulted from the request being unanswered. However, Plaintiff did not file another grievance

or request until April 19, 2005, at which time he was scheduled for an appointment with Dr. Blackman on April 21, 2005.

Plaintiff further alleges on February 20, 2005, he went to see the dentist for a dry-socket and was to have a follow-up that did not occur. However, Plaintiff did see Dr. Blackman on February 10, 2005. Moreover, Plaintiff did not put in any further dental request until July 18, 2005. When Plaintiff did request dental treatment on July 18, 2005, he was given the first available appointment of August 23, 2005.

As the records indicate, Plaintiff was given prompt medical attention when requested. Even assuming Plaintiff was denied prompt medical attention on one the instances alleged, he has presented no evidence of how he was injured or damaged by not receiving the desired medial treatment. Although Plaintiff states he did not see a dentist after January 27, 2005, the records clearly show Plaintiff had access to physicians throughout his incarceration in Clark County, including an appointment on the day of his release. As for any grievances or requests which were allegedly thrown away, Plaintiff has not stated how he was denied medical care in these instances or how he was harmed. Accordingly, Plaintiff can not show that he suffered from any serious medical need that was ignored or that medical treatment was denied. Defendants' motion for summary judgment should be granted.

### III. CONCLUSION

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 14) be **GRANTED**.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections**

**may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

    **IT IS SO ORDERED** this **2nd day of August, 2007.**

                                              /s/ Barry A. Bryant
                                              HON. BARRY A.  BRYANT
                                              UNITED STATES MAGISTRATE JUDGE